UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GINA PIERRE PAUL,

                               Plaintiff,

-against-

BANK OF AMERICA CORPORATION, BANK OF
AMERICA, N.A. and FIA CARD SERVICES,

                               Defendant.
------------------------------------------------------------------x

**MEMORANDUM & ORDER**

09-CV-1932 (ENV)(JMA)

**VITALIANO, D.J.**

Plaintiff Gina Pierre Paul commenced this diversity action against defendants Bank of America Corporation ("BOA"), Bank of America, N.A. ("BAC"), and Fia Card Services ("FIA") asserting claims of negligence, breach of contract, and false arrest. Defendants now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

## I.    BACKGROUND

Paul is a 32 year-old certified nurse's aide who, until the circumstances surrounding this case, had never been arrested or charged with a crime. In August 2006, Paul received a telephone solicitation to open a credit card with BOA. (Am. Compl. ¶ 13.) During the application process, Paul provided personal information to the bank and was informed that she had been approved for a credit card. (Id.) Plaintiff received the credit card at her home address and activated it from her home telephone number, (id.), thereby becoming a holder of a BAC/FIA credit card account. (Id. ¶ 14.) In connection with this account, the parties entered

1

into a cardmember agreement that was in effect from August 2006 to December 2007. (Id. ¶ 15.) This agreement governed the duties and responsibilities of the parties. (Id. ¶¶ 16-17.) Over the next year, plaintiff used the card to make purchases and receive cash advances; she also made several payments on the account. (Id. ¶ 18.)

In September 2007, someone unknown to plaintiff, bearing the name Gina Paul, notified defendants that plaintiff's credit card account was appearing on her credit report. (Id. ¶ 19.) Defendants contacted the New York City Police Department ("NYPD") and, it is alleged, falsely reported that plaintiff had committed fraud. Defendants, in connection with their report, provided plaintiff's personal information and account documents to NYPD. (Id.) NYPD subsequently arrested plaintiff and detained her for 24 hours. (Id. ¶ 20.) Paul was charged with, among other things, identify theft, apparently based on the representations of BAC fraud investigator Sean Twomey. (Id.) Plaintiff defended the case for approximately one year until all charges against her were dismissed by the Kings County District Attorney's Office. (Id.) As a result of the arrest, and despite the fact that all charges against her were ultimately dismissed, Paul lost her job at Coney Island Hospital, where she had previously worked full-time for two years. (Id.) She has since been unable to find work in the municipal hospital system. (See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, at 6.)

In this lawsuit's first cause of action, Paul alleges that defendants were negligent in assigning her account to the credit history of another, in investigating the fraud reported to police, and in making misrepresentations to NYPD. (Am. Compl. ¶ 28.) In the second cause of action, Paul claims that defendants breached the privacy provisions of the cardmember agreement when they provided her personal information to the police and otherwise acted in bad

faith. (Id. ¶¶ 35-37.) Finally, in her third cause of action, plaintiff alleges that defendants incited her arrest when, without reasonable cause to believe that plaintiff had committed a crime, they contacted NYPD, falsely reported that she had committed fraud, and provided the police with her personal information to facilitate prosecution. (Id. ¶¶ 41-43.)

## II. DISCUSSION

### A. Standard of Review

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a court must accept as true all of the allegations contained in a complaint." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); see also Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (quoting Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d. Cir. 2007)) (noting that, in considering a motion to dismiss, a court must "accept as true all statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party."). That said, a court need not accept a plaintiff's legal conclusions and characterizations as true. Iqbal, 129 S. Ct. at 1949-1950. For a complaint to be valid, it must "'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that tenders "'naked assertion[s] devoid of 'further factual enhancement'" will not survive a motion to dismiss. Id. (quoting Twombly, 550 U.S. at 557); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (quoting Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a

3

motion to dismiss.").

The role of the Court in considering a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof[,]" Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980), and not to be swayed by the fact that the possibility of ultimate recovery might be remote. Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). On a motion to dismiss, the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Rheingold v. Harrison Town Police Dept., 568 F. Supp. 2d 384, 389 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004)). Dismissal of a complaint is only appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

In reaching its decision, a court may consider, in addition to the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing the suit, and matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000). More to the point here, "'[w]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which [she] solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.'" Holowecki v. Fed. Express Corp., 440 F.3d 558, 565-66 (2d Cir. 2006) (quoting

Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)), aff'd, 552 U.S. 389 (2008). Thus, the Court will rely upon the cardmember agreement, (see Declaration of Casey D. Laffey in Support of Motion to Dismis ("Laffey Moving Decl."), Ex. B), and defendant's "Privacy Policy for Consumers" (see Laffey Moving Decl., Ex. C), in deciding the instant motion.

B. **Negligence Claims**

To sustain a cause of action for negligence under New York law, a plaintiff must prove that (1) defendant owed plaintiff a duty of care; (2) defendant breached this duty; (3) plaintiff suffered an injury; and (4) defendant's breach was the direct and proximate cause of the injury. See Colorado Capital v. Owens, 227 F.R.D. 181, 187 (E.D.N.Y. 2005). Duty has been defined as "'a relationship between . . . two parties such that society imposes an obligation on one to protect the other from an unreasonable risk of harm.'" Id. at 188 (quoting Stanford v. Kuwait Airways Corp., 89 F.3d 117, 123 (2d Cir. 1996)). To show proximate causation, "a plaintiff must establish that the defendant's negligence was a substantial foreseeable factor in bringing about his or her injury." Johnson v. Bryco Arms, 304 F. Supp. 2d 383, 395 (E.D.N.Y. 2004). The issue of proximate causation is generally a question of fact. See Colorado Capital, 227 F.R.D. at 189.

Plaintiff's cause of action for negligence rests on two groups of allegations. First off, Paul alleges that defendants breached their duty of care to her by failing to act in a reasonably prudent manner in establishing her credit card account; assigning the account to another's credit history; failing to conduct a proper investigation when notified of the error; and misrepresenting to the police that plaintiff used false information to obtain the account. Next, plaintiff claims that

defendants were negligent in failing to supervise employees; ensure that customer solicitations were carried out properly; in failing to properly verify that a prospective customer contacted by solicitors is the person represented in their records; and in failing to have an office policy requiring such verification, investigation into errors in the issuance of credit card accounts, and reporting criminal activity to the police.

Analysis of plaintiff's negligence claims pivots on the reality that New York does not, as a matter of public policy, recognize a claim for negligence arising out of an arrest or prosecution. See Sajimi v. City of New York, No. 07-CV-3252, 2011 U.S. Dist. LEXIS 3912, at *25-*27 (E.D.N.Y. Jan. 13, 2011); Rivers v. Towers, Perrin, Forester & Crosby, Inc., No. 07-CV-5441, 2009 U.S. Dist. LEXIS 26301, at *29 (E.D.N.Y. Mar. 27, 2009); Mitchell v. County of Nassau, No. 05-CV-4957, 2007 U.S. Dist. LEXIS 38711, at *42-*43 (E.D.N.Y. May 24, 2007). To the extent that a negligence claim is based upon injury incident to an arrest, a plaintiff must resort to the traditional tort remedies of false arrest, false imprisonment, and malicious prosecution. See Jenkins v. City of New York, No. 91-CV-3639, 1992 WL 147647, at *8 (S.D.N.Y. Jun. 15, 1992) ("Plaintiffs cannot circumvent the well-established requirements of the false arrest . . . cause [] of action by inventing new theories of negligence."); see also Mitchell, 2007 U.S. Dist. LEXIS 38711, at *42-*43 ("Plaintiff's creative attempt to describe her negligence claim as one for . . . negligent maintenance of equipment and negligent hiring and supervision, cannot circumvent [the] public policy of the State of New York."). Paul's claims of negligent investigation of a reported crime and negligent misrepresentation to NYPD are obviously reliant on injuries that flow from the arrest, that is, are based on injuries that would not have been

incurred but for her arrest and prosecution. Therefore, those claims must be dismissed pursuant to New York public policy.

Ultimately, Paul yields on this point. She concedes that there is no cause of action in New York sounding in negligent investigation. Then, in a twist, plaintiff argues that defendants may be held liable anyway for negligent maintenance of her account. Courts in this circuit have held that banks do owe a duty to exercise reasonable care in managing customer accounts. See, e.g., Dubai Islamic Bank v. Citibank, N.A., 126 F. Supp. 2d 659, 667 (S.D.N.Y. 2000); Bank v. Brussels Lambert, S.A. v. Intermetals Corp., 779 F. Supp. 741, 747 (S.D.N.Y. 1991) ("[I]t is true without question that [the bank] had a duty to exercise reasonable skill and care in carrying out its activities for its customer . . . ."). Pointedly, courts have recognized that a failure to verify a customer's identity may constitute a breach of a bank's duty of reasonable care. See, e.g., Torcik v. Chase Manhattan Bank, Inc., No. 02-CV-5994, 2005 WL 2155138, at *4 (E.D.N.Y. Sept. 7, 2005) (finding that Chase Manhattan Bank was under a duty to use reasonable care in relaying plaintiff's Social Security number to its verification service, and "that a reasonable jury could conclude that a refusal to correct an error in relaying such information constitutes a breach of that duty."). Notwithstanding the existence of such a duty, Paul's claimed injury arises solely out of the facts and circumstances surrounding her arrest. The arrest short-circuits the causation inquiry. In other words, even though the claimed negligence of the bank arguably was a substantial factor bringing about plaintiff's arrest, she cannot vault the hurdle that this type of negligence claim is simply not cognizable in New York. See, e.g., Mitchell, 2007 U.S. Dist. LEXIS 38711, at *42-*43 (negligence claim that plaintiff would not have been arrested if defendant had more carefully maintained their equipment and investigated her claim prior to

7

filing a criminal complaint dismissed as barred by public policy); Pandolfo v. U.A. Cable Systems, 171 A.D.2d 1013, 1014, 568 N.Y.S.2d 981, 982 (4th Dep't 1991) (negligence claim that plaintiff would not have been prosecuted had defendant's employees been more careful dismissed as barred by public policy).

Paul's claims that defendants were negligent in failing to supervise employees and to have office policies regarding the verification of customer's identities, investigation into errors in the issuance of credit card accounts, and the reporting of criminal activity to the police, must also be dismissed, because they too are predicated on injuries flowing only from her criminal prosecution. See Baez v. Jetblue Airways Corp., No. 09-CV-596, 2009 U.S. Dist. LEXIS 67020, at *16-*18 n. 4 (E.D.N.Y. Aug. 3, 2009) (quoting Russ v. State Employees Fed. Credit Union, 298 A.D.2d 791, 793, 750 N.Y.S.2d 658 (3d Dep't 2002)) (New York's public policy bars a claim for negligent training in investigative procedures because it "is akin to a claim for negligent investigation or prosecution."); Hicks v. City of Buffalo, 124 F. App'x 20, 25 (2d Cir. 2004); McCray v. City of New York, No. 03-CV-9685, 2007 WL 4352748, at *29-*30 (S.D.N.Y. Dec. 11, 2007) (dismissing claims of negligent hiring, negligent retention, negligent investigation, negligent training, and negligent supervision because these claims arose out of the same facts as the claims for false arrest and such claims are in contravention of New York's public policy); Jenkins, 1992 WL 147647, at *8 (same).

In sum, all of Paul's negligence claims against defendants must be dismissed because the consequences she complains of spring entirely from her arrest by NYPD and prosecution by the District Attorney. The only tort remedy available for such an injury in New York is by way of the traditional remedies relating to false arrest or malicious prosecution.

8

C.  **Breach of Contract**

1. Cardmember Agreement

To state a cognizable claim for breach of contract, a plaintiff must allege that (1) a valid agreement was formed; (2) plaintiff performed or would have performed his obligations under the agreement; (3) defendant breached the agreement through no fault of plaintiff; and (4) plaintiff was damaged as a result of the breach. See Enercomp, Inc. v. McCorhill Publ'g, Inc., 873 F.2d 536, 542 (2d Cir. 1989); Kaplan v. Aspen Knolls Corp., 290 F. Supp. 2d 335, 337 (E.D.N.Y. 2003). Plaintiff's complaint details the nature of the contract in question (that of debtor and creditor), when the contractual relationship was formed (August 2006), and when it was terminated (December 2007), thereby satisfying the first element. The second element is also satisfied as Paul met her obligations under the contract; the complaint details that plaintiff received credit from defendants and made payments on her debt over the course of a year. What is in dispute is whether the complaint sufficiently alleges that defendants breached the cardmember agreement, as required by the third element.

"A claim for breach of contract must allege, at a minimum, the terms of the contract, each element of the alleged breach and the resultant damages." Kaplan, 290 F. Supp. 2d at 337 (citing Computech International, Inc. v. Compaq Computer Corp., No. 02-Civ-2628, 2002 WL 31398933, at *2 (S.D.N.Y. Oct. 24, 2002)); see also Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) ("When pleading . . . [a breach of contract claim], a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue."), aff'd, 65 F. App'x 736 (2d Cir. 2003); Orange County Choppers, Inc. v. Olaes Enterprises, Inc., 497 F. Supp. 2d 541, 554 (S.D.N.Y. 2007) (dismissing breach of contract claim when the

9

complaint failed to allege the specific provision of the agreement allegedly breached). In a fatal flaw, Paul's complaint fails to identify the specific contractual provision or provisions in the cardholder agreement allegedly breached by defendants and, as a result, the claims must be dismissed.

In some cases, leave to replead might be in order, but here Paul has provided no basis for the assertion that the cardmember agreement, which is before the Court on this motion, precluded defendants from providing plaintiff's personal information without prior authorization. To the contrary, section 18 of the cardmember agreement provides, "[y]ou authorize us to collect information about you in order to conduct our business . . . You authorize us to share such information about you or your account with our affiliates and others." (See Laffey Moving Decl., Ex. B.) Furthermore, plaintiff received a copy of defendants' privacy policy, which is incorporated by reference into the cardmember agreement and expressly provides that defendants may disclose plaintiff's information in connection with any fraud prevention or investigation. (See Laffey Moving Decl., Ex. C.) The contract, simply, places no limitation at all as to the nature or quality of the information shared. There is no provision that defendants certify or even assert that the shared information is accurate. Nor does the cardmember agreement provide any circumspection of how shared information is to be gathered. All that is provided is that defendants may collect the information and plaintiff agrees that whatever is collected (effectively erroneous or incomplete or not) may be shared. Therefore, since it appears that no provision in the agreement, express or implied, see infra, precluded defendants from sharing information relating to her account, Paul's claim for breach of contract must be dismissed.

2. Other Contract Claims

Nor is plaintiff's action on contract saved by her claim that defendants acted in bad faith for such a claim is insufficient absent some allegation of how defendants acted in bad faith. Iqbal, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Bad faith, in contrast to the covenant of good faith implicit in all contracts, "requires a degree of malice or sinister motive." India.com, Inc. v. Dalal, 324 F. App'x 59, 61 (2d Cir. 2009); see also Gordon v. Nationwide Mut. Ins. Co., 30 N.Y.2d 427, 437, 285 N.E.2d 849, 854, 334 N.Y.S.2d 601, 609 (1972) ("[B]ad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract."). Since such allegation is absent, Paul's bad faith claim does not survive.

As suggested above, it is true that, under New York law, a duty of good faith is implicit in every contract, but only in connection with the rights or obligations set forth in the terms of the contract. See Wolff, 65 F. App'x at 739 (citing Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d. 1052, 1056 (2d Cir. 1992)). To the extent that plaintiff brings a claim for breach of the covenant of good faith, it too fails as a matter of law. Indeed, the plain language of the cardmember agreement did not prohibit defendants from sharing plaintiff's information. Cf. Boccardi Capital Sys., Inc. v. De Shaw Laminar Portfolios, L.L.C., 355 F. App'x 516, 519 (2d Cir. 2009) ("Our conclusion that Boccardi has failed sufficiently to allege a breach of contract compels a similar conclusion respecting its claim, grounded in the same factual predicate, for breach of the implied duty of good faith and fair dealing."). To succeed on such a claim more than negligence is needed. Where the conduct complained of does not breach any express

11

provision, the implied covenant of good faith will not be breached without some showing of intent to harm the other contracting party or a reckless disregard of it. See Carvel Corp. v. Diversified Mgmt. Group, Inc., 930 F.2d 228, 230 (2d Cir. 1991) (quoting Grad v. Roberts, 14 N.Y.2d 70, 75, 198 N.E.2d 26, 28, 248 N.Y.S.2d 633, 637 (1964)). No such allegation of fact is present here. Consequently, defendants' motion to dismiss the breach of contract claims is granted in its entirety.

D. **False Arrest Claims**

To establish a cause of action for false arrest in New York, a plaintiff must show that "(1) the defendant intended to confine [her], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Rheingold, 568 F. Supp. 2d at 389 (quoting Broughton v. State, 37 N.Y.2d 451, 456, 335 N.E.2d 310, 373 N.Y.S.2d 87, cert. denied, 423 U.S. 929, 96 S. Ct. 277 (1975)). There can be no valid claim for false arrest when a private individual "merely seek[s] police assistance or furnish[es] information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed. . . . [n]or does identifying plaintiff as the perpetrator of a crime, signing the summons or testifying at trial give rise to tort liability." Du Chateau v. Metro-North Commuter R.R. Co., 253 A.D.2d 128, 131, 688 N.Y.S.2d 12, 15 (1st Dep't 1999). However, a defendant is liable for false arrest if, with the intent to have the plaintiff arrested, he makes false statements to the police and instigates an arrest. See Weintraub v. Board of Educ. of the City of New York, 423 F. Supp. 2d 38, 56 (E.D.N.Y. 2006). If a defendant erroneously reports a suspected crime, but in no other way instigates the arrest, he is not liable for false imprisonment. See Baez, 2009 U.S. Dist. LEXIS

67020, at *28-*29; see also King v Crossland, 111 F.3d 251, 257 (2d Cir. 1997) (dismissing claim for false arrest when defendant merely identified the holders of reportedly stolen travelers' check to NYPD officers because such actions did not rise to the level of directing or instigating an arrest); Nevin v. Citibank, N.A., 107 F. Supp. 2d 333, 337 (S.D.N.Y.2000) (where security person reported to the police that plaintiff acted suspiciously when using a credit card, police conducted their own investigation, and no arrest was made, claim dismissed); Courtman v. Hudson Valley Bank, 37 A.D.3d 181, 182, 829 N.Y.S.2d 67, 68 (1st Dep't 2007) (where bank made good faith report that plaintiff stole $40,000 and took no other action other than making a report, claim dismissed against bank).

Intent lies at the root of such a claim and to establish it "a plaintiff must show that the defendant either: (a) confined or intended to confine the plaintiff or (b) affirmatively procured or instigated the plaintiffs' arrest." King, 111 F.3d at 255. Defendants argue that plaintiff cannot make out a false arrest claim as a matter of law because Paul did not plead the element of intent. Not so. Paul has alleged that defendants intentionally contacted NYPD to provide information (false she claims) that would cause NYPD to confine her. Common sense commands the conclusion that if defendants intentionally provided the police with such information that plaintiff is pleading that defendant provided such information with the intent of instigating her arrest and confinement.

Moreover, plaintiff's allegation that defendants intentionally caused or instigated her arrest raises issues of fact that the Court cannot resolve at this stage of the litigation. In New York, "if the arrest is false and actionable, a private person who affirmatively procures or instigates the arrest will be liable as a tort-feaser." Ali v. Bowery Sav. Bank, No. 83-CV-0164,

13

1987 WL 30623, at *1 (E.D.N.Y. Dec. 23, 1987) (quoting Stearns v. New York City Transit Authority, 24 Misc. 2d 216, 220, 200 N.Y.S. 2d 272, 276 (1960)). A defendant may be said to "instigate" an arrest if he has shown "undue zeal" or has been "active and officious." Curley v. Am. Airlines, Inc., No. 91-CV-2724, 1996 WL 668857, at *1 (S.D.N.Y. Nov. 19, 1996) (citing Regan v. Morgan, 211 A.D. 443, 444, 207 N.Y.S. 395, 396 (4th Dep't 1925); see also Mesiti v. Wegman, 307 A.D.2d 339, 341, 763 N.Y.S.2d 67, 70 (2d Dep't 2003) (affirmed a jury verdict against the civil defendant for false arrest where the defendant had acted with "undue zeal" and affirmatively instigated the plaintiff's arrest by going to plaintiff's place of business, telephoning the police, and identifying plaintiff on the spot). In the instant case, the complaint specifically alleges that defendants instigated plaintiff's arrest by contacting NYPD, falsely reporting a fraud, and providing the police with plaintiff's personal information, including her home address. In the end, Paul was arrested solely based on the representations of defendants' fraud investigator. By furnishing plaintiff's personal information to the police, defendants went beyond merely identifying a potential culprit of a suspected crime. See, e.g., Stearns v. New York City Transit Authority, 24 Misc. 2d 216, 219-20, 200 N.Y.S.2d 272, 276 (Sup. Ct. N.Y.C. 1960). And critically, whether a defendant's conduct rises to the level of instigating is a question of fact. See Curley, 1996 WL 668857, at *2. It is clear beyond question that defendants' fingerprints are all over Paul's arrest and that the Court may not dispose of plaintiff's false arrest claim on a Rule 12 motion if the other elements of such a claim are properly pleaded.

On that score, since the parties agree that plaintiff was conscious of the confinement and did not consent to it, the only outstanding issue is whether plaintiff has adequately alleged that the confinement was not otherwise privileged. A confinement is privileged if it is supported by

14

probable cause. "Under New York law, probable cause to arrest is a complete defense to a claim of false arrest." Posr v. Court Officer Shield # 207, 180 F.3d 409, 414 (2d Cir. 1999). Further, probable cause to arrest exists when a person has "'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Id. (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). Even private defendants may be held liable for false arrest where the defendants "lack reasonable cause for their belief in the plaintiff's culpability." Rivers, 2009 U.S. Dist. LEXIS 26301, at *11 (quoting Weintraub, 423 F. Supp. 2d at 56). Here, Paul alleges that defendants made false accusations to the police and withheld information from the NYPD that may have demonstrated the absence of probable cause to arrest her. Specifically, Paul contends that defendants failed to inform NYPD that they personally solicited her for the credit card, that she provided truthful personal contact and identifying information to the bank, and that she had made several payments on the credit card account. The bottom line is that Paul's allegations that defendants made "false and malicious accusation[s]" to the police, leading to an arrest based solely upon that false accusation, is sufficient to withstand a motion to dismiss. Druschke v. Banana Republic, Inc., 359 F. Supp. 2d 308, 312-13 (S.D.N.Y. 2005). It is clear that the general policy of encouraging individuals to report crimes is inapplicable when defendants are alleged to have knowingly furnished false information to the police to instigate an arrest. Id.; see also Orndorff v. De Nooyer Chevrolet, Inc., 117 A.D.2d 365, 503 N.Y.S.2d 444 (3d Dep't 1986).

Defendants argue that plaintiff's complaint that they "lacked reasonable cause" is conclusory and insufficient at as a matter of law. At the pleading stage, however, plaintiff does

15

not have to explain why defendants lacked probable cause or support the general allegation. See Rivers, 2009 U.S. Dist. LEXIS 26301, at *11 (finding a claim properly alleged where plaintiff alleged that defendants had lacked reasonable cause for their belief in his culpability in the complaint, which stated that defendants "intentionally, falsely, and maliciously asserted that plaintiff committed various crimes to purposefully cause plaintiff's false arrest."). Paul has sufficiently staked out her claim. She alleges that the bank notified NYPD, provided information with the intent of at least instigating her arrest, and that the information provided was false and/or intentionally incomplete. The failure of the bank, moreover, to turn over exculpatory evidence in their possession to the police, as Paul alleges, may, in fact, be evidence of an intent to instigate plaintiff's arrest over-zealously or officiously. In that context, the absence of reasonable cause to arrest is sufficiently pled.

Accordingly, defendants' motion to dismiss as to plaintiff's false arrest claim is denied.

### III.  CONCLUSION

For all the foregoing reasons, defendants' motion is granted in part and denied in part.

The parties are directed to conclude discovery expeditiously and prepare to move on to the next phase of this litigation.

**SO ORDERED.**

Dated: Brooklyn, New York
February 14, 2011

s/ENV

_____
ERIC N. VITALIANO
United States District Judge